UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Alexia Gah Gi Gay Mary Cutbank,<br><br>Defendant. | Case No. 21-cv-268(1) (SRN/LIB)<br><br>**Order** |

Deidre Y. Aanstad, United States Attorney's Office, 300 S 4th St Ste 600, Minneapolis, MN 55415, for the Government.

R. J. Zayed, Dorsey & Whitney LLP, 50 S 6th St Ste 1500, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Motion to Revoke Detention Order [Doc. No. 123]. The Government opposes Defendant's motion [Doc. No. 134]. A hearing was held on the motion before the undersigned judge on May 24, 2022. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **DENIES** the motion.

I.     BACKGROUND

Defendant Alexia Gah Gi Gay Mary Cutbank ("Cutbank") is a twenty-year-old woman charged with second degree murder, assault with a dangerous weapon, and assault resulting in serious bodily injury. (Superseding Indictment [Doc. No. 39].) The Indictment charges Cutbank with committing the offense on or about August 12, 2019. (*Id.*)

1

Cutbank was indicted by a grand jury on December 9, 2021. (Original Indictment [Doc. No. 1].) On December 10, 2021, Cutbank made her initial court appearance, and the Government moved for detention. (Order Den. Release [Doc. No. 135] at 2.) A detention hearing was held on December 15, 2021, and Cutbank waived argument and agreed to be detained pending trial. (*Id.*)

## A.   Procedural Posture

On March 25, 2022, Cutbank filed a Motion for Release to Treatment ("Mot. for Release" [Doc. No. 108]), in which she argued that the birth of her daughter on January 20, 2022 presented a change of circumstances that should permit her to "enter into an appropriate alternative detention." (*Id.* at 1.) She informed the Court that she had been accepted for treatment at Avivo, a substance abuse treatment and recovery facility for families that would allow her to live with her two-month-old-daughter, and she moved for release to the facility. (*Id.* at 3; Reuter's Decl. [Doc. 109] at ¶ 3.)

Magistrate Judge Leo Brisbois denied her motion during a hearing on April 8, 2022. (April 8, 2022 Mins. [Doc. No. 117].) In his denial, Magistrate Judge Brisbois relied on several factors set forth in 18 U.S.C. § 3142(g), including the nature and circumstances of the offense charged under § 3142(g)(1), and the history and characteristics of Cutbank, including her criminal history, and record concerning appearance at court proceedings. Specifically, he made the following findings:

> Since the alleged offense in August 2019, Defendant Cutbank's record, as outlined in the bond report and supplemental reports, is replete with warrants for failing to appear at court appearances, violations of court-imposed conditions, and violations of post-conviction supervision. Further, Defendant Cutbank has willfully attempted to avoid lawful police authority with acts of

>fleeing, false information, and failing to maintain contact with probation officers. . . . Defendant Cutbank has absconded from treatment in a prior matter. Finally, since August 2019, Defendant Cutbank is accused of multiple crimes of violence, each of which carries a lengthy term of imprisonment.

(Order Den. Release at 4.) Based on these findings, Magistrate Judge Brisbois concluded that the Government had shown by a preponderance of the evidence that no condition or combination of conditions of bond would reasonably ensure Cutbank's appearance in court. (*Id.* at 5.)

On April 22, 2022, Cutbank filed a motion under 18 U.S.C. § 3145(b), appealing the magistrate judge's decision. (Mot. Revoke Detention Order [Doc. No. 123].)

**B.    Party Positions**

Cutbank contends that the conditions at the in-patient treatment center would ensure her appearance in court, that the birth of her child has changed her mindset and made her more likely to succeed in an in-patient treatment facility, and that the magistrate judge failed to consider other methods to assure Cutbank's appearance in court. (Def.'s Supp. Mem. [Doc. No. 124] at 2–6.) For example, she suggests the use of electronic ankle monitors or daily check-ins with probation would provide strong assurances that she would appear for all court proceedings. (*Id.* at 4.)

The Government responds that detention is necessary to ensure Cutbank's appearance in court. (Gov't's Resp. Opp'n [Doc. No 134] at 6.) The Government argues that the nature and circumstances of the underlying offense are serious and violent, and that the Government has strong evidence of Cutbank's involvement. (*Id.* at 6.) Further, the Government relies on Ms. Cutbank's significant criminal history, her history of failing to

3

appear for court proceedings, and her past probation violations to establish that there is no set of conditions that could ensure her appearance in court. (*Id.* at 7–8.)

## II.   DISCUSSION

### A.   The Law

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). A district court's review of a detention order entered by a magistrate judge "should proceed de novo." *United States v. Maull*, 773 F.2d 1479, 1481 (8th Cir. 1985) (en banc).

Under 18 U.S.C. § 3142(e), a defendant shall be detained pending trial if, after a hearing pursuant to subsection (f), "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). To determine whether such condition or combination thereof exists, courts consider available information regarding: (1) the nature of the circumstances charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person of the community that would be posed by the person's release. *Id.* at § 3142(g).

To justify detention, the government must show by clear and convincing evidence that no such condition(s) will reasonably assure the safety of the community or by a preponderance of the evidence that no such conditions will reasonably assure Cutbank's appearance. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

4

**B.     Analysis**

  **1.     Cutbank's History and Characteristics**

In determining whether release on conditions is appropriate, the Court considers the history and characteristics of Cutbank, which includes her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." *U.S. v. Knife*, No. 20-cr-50122-01 (JLV), 2021 WL 2416883, at *2 (D.S.D. June 14, 2021), *aff'd*, 21-2456, 2021 WL 6210683 (8th Cir. July 19, 2021) (citing 18 U.S.C. § 3142(g)). The Court also considers "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)

A review of the Bail Report and Addendum indicates Cutbank has been charged multiple times with lying to and fleeing from peace officers. (Bail Report [Doc. No. 14]; Bail Report Addendum [Doc. No. 23] at 1, 3–9.) The Bail Report also sets forth a history of probation violations and supervision absconsions (Bail Report Addendum at 4–7), and numerous incidents where Cutbank failed to appear at court. (*Id.* at 7–10 (indicating Cutbank failed to appear for court proceedings on 09/26/2019, 11/14/2019, 01/02/2020, 09/21/2020, 11/18/2020, 1/04/2021, 02/02/2021, 02/22/2021, 06/17/2021, 06/21/2021, 06/28/2021, 08/16/2021, and 11/09/2021).)

Further, Cutbank has not demonstrated success under supervision in the past, which concerns the Court. When she was indicted for the instant offense, Cutbank was on

probation for several prior crimes, including a felony conviction for fleeing a peace officer in a motor vehicle. (Bail Report Addendum at 9.) She was also out on bond for charges of attempted murder in the first degree and possession of a firearm by a felon. (Supp. Status. R. [Doc. No. 130] at 3.) The Court also notes that while she was out on bond for this serious crime, she was arrested and charged with several misdemeanors, and at least one felony. (Bail Report Addendum at 11.)

After those arrests, Cutbank did voluntarily enter a treatment facility, Four Winds Lodge, in November of 2021. (Reuter Decl., Ex. 1 ("Cutbank Decl.") [Doc. No. 109-1] at 1.) Unfortunately, she relapsed and did not complete the program. (*Id.*) Cutbank was also scheduled to commence treatment at New Freedom Inc., another treatment facility, in Mille Lacs on November 22, 2021. (Supp. Status R. at 5.) However, she became uncooperative in accepting transportation into the program. (*Id.*)

Additionally, since Cutbank was detained on December 10, 2021, the Court has received notice of multiple disciplinary reports from her prison facility. On March 8, 2022, Cutbank was placed on 23-hour lockdown after she was found to be in possession of "hooch." (Supp. Status. R. at 5.) On May 7, 2022, Cutbank received 17 days of lockdown when she was again found to be in possession of hooch. (Revised Supp. Status R. [Doc. No 146] at 1.) On March 28, 2022 she was found to be participating in three-way calling and messaging with another inmate, the father of her child, in violation of prison rules (Supp. Status R. at 5), and on May 24, 2022, she was seen passing notes between housing units to the same individual, again in violation of the facility's rules. (Revised Supp. Status R. at 1.) Although the Court applauds Cutbank's desire to seek treatment, her history of

6

disciplinary infractions in prison, and lack of success at prior treatment facilities raises concerns about her amenability to supervision.

Cutbank contends that the birth of her daughter has dramatically changed her perspective, and that her desire to bond with her child would mitigate any risk that she would abscond from the treatment facility. Although the Court empathizes with Cutbank over her separation from her daughter, the facts in this case indicate that there is a serious risk of non-appearance if Cutbank is released to Avivo.

### 2. No Conditions or Set of Conditions Can Reasonably Assure Cutbank's Appearance in Court

The Court has considered all of the conditions suggested by Defendant to ensure her attendance at court proceedings, but must conclude that even with extra measures such as an ankle monitor or daily check-ins, there remains a risk of non-appearance.

Having conducted a de novo review of the factors set forth in 18 U.S.C. § 3142(g), the Court agrees with the magistrate judge that the Government has established by a preponderance of the evidence that Cutbank presents a risk of non- appearance based on her prior failures to appear at court proceedings, her prior probation violations, instances of absconding from supervision, and her history of fleeing from law enforcement. The Court finds that no condition or combination of conditions will reasonably assure Cutbank's appearance at future court proceedings.

## III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Revoke Detention Order [Doc. No. 123] is **DENIED**.

Dated: May 27, 2022                                              s/Susan Richard Nelson
                                                                 SUSAN RICHARD NELSON
                                                                 United States District Judge