UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 21-268(1)(SRN/LIB)

UNITED STATES OF AMERICA,

            Plaintiff,

                                                    **GOVERNMENT'S**
      v.                                            **POSITION WITH**
                                                    **RESPECT TO**
(1) ALEXIA GAH GI GAY MARY CUTBANK,                 **SENTENCING**

            Defendant.


The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Deidre Y. Aanstad, Assistant United States Attorney, hereby submits its position with respect to sentencing of Defendant Alexia Gah Gi Gay Mary Cutbank.  For the reasons set forth below, the United States respectfully requests that the Court impose a sentence of 276 months of imprisonment followed by 5 years of supervised release.  Such a sentence is sufficient, but not greater than necessary to comply with the basic purposes of criminal punishment: just punishment, incapacitation, and rehabilitation.

## **INTRODUCTION**

When Alexia Cutbank believes she or her circle of family and friends have been wronged, she is not afraid to use any means necessary to seek retribution.  In August 2019, Daniel Johnson paid the ultimate price because he wronged Alexia Cutbank.  Alexia Cutbank predicted her actions and carried out her actions when she finally found Daniel Johnson in the early morning hours of August 12, 2019.

I.      **Offense Conduct**

*The Murder of Daniel Johnson*

Shortly before 1:00 a.m. on August 12, 2019, 23-year-old Daniel Johnson was standing in the small single stall garage of the Marlena Mondragon residence on the Red Lake Indian Reservation getting methamphetamine ready to smoke when the door from the breezeway opened.  (Presentence Investigation Report ["PSR"] ¶ 14.)  Tyra Schoenborn and David Jourdain were both in the garage talking with Johnson.  All three turned towards the door and observed three masked individuals standing in the doorway.[1]  The first masked individual raised a firearm.



**Figure 1 (Marlena Mondragon Residence)**



**Figure 2 (Breezeway between the garage and the home)**

Before Johnson, Schoenborn, and Jourdain could fully grasp who was entering the garage and what was happening, gunfire erupted.  Three shots were fired and Johnson was left mortally wounded with gunshot wounds to his chest and leg.  Schoenborn was shot in her right leg as she tried to crouch away from the gunfire.  Jourdain, who was on the

---

[1]  Although contested, the surviving victim and eye witness both reported that the individuals that entered the garage were masked.

opposite side of the garage as Johnson and Schoenborn, dove behind a dryer to escape the gunfire.   Within moments of entering, the three masked individuals turned from the doorway of the garage and left.



**Figure 3 (entrance to garage from breezeway)**



**Figure 4 (doorway of garage looking to south side of garage)**

Jourdain ran across the breezeway to the house, and Marlena Mondragon called law enforcement immediately.  (PSR ¶ 15.)  Within minutes after the murder of Daniel Johnson, Jourdain was providing a statement to law enforcement about the three masked individuals. During the shooting, Jourdain was on the north side of the garage and in the best position to see the three masked individuals enter through the door between the breezeway and the garage.  *See* Figure 4.  Jourdain reported that he observed all the three individuals with masks on their faces.   He observed that the first masked individual with the firearm

3

appeared to be a female based on the length and color of her hair, her physical appearance, and her height.  The next masked individual appeared to be a male based on his physical appearance.  Jourdain could not determine whether the third masked individual was male or female because he was unable to see the individual's full body.  After providing a description of the suspects, Jourdain provided law enforcement with a motive for the ambush-style attack – Johnson had stolen a Cadillac, drugs, and money from Alexia Cutbank approximately 14 days before the murder.  (PSR ¶ 9.)

Although it seemed an easy case with a known motive, law enforcement spent more than two years chasing leads, interviewing witnesses, understanding relationships, and conducting an electronic investigation to uncover sufficient evidence to determine that Alexia Cutbank, Daniel Barrett, and Defendant Sumner were the three masked individuals that entered the Mondragon residence on August 12, 2019.  Defendant Alexia Cutbank brazenly executed Johnson while he stood in the garage in retaliation for his misdeeds in crossing her.  In fact, just a day prior to the murder, Defendant Cutbank wrote an email to a Minnesota Department of Corrections inmate and stated, she "…done went n tried to take my shit back 3 times lol shit got straight bussin.  N*gga called the cops every time so now I'm just drillin shit when I go try get my whip back again.  You know? . . . It'll be my turn to be in prison soon lol it's inevitable."  (PSR ¶ 12.)

*Events That Led to the Murder of Daniel Johnson*

Daniel Johnson was not perfect.  He was an addict that was known on the Red Lake Indian Reservation to take things from other people.  In the summer of 2019, he was living

at the Marlena Mondragon house.  At Marlena's house, he had found a family of sorts in Marlena, Jourdain, Jordan Drouillard, and others that came in and out of the house to stay and use drugs.

It was at Marlena's house where he first met Mia Sumner.  Over the course of the summer, Sumner was a regular visitor to the Mondragon house.  (PSR ¶ 8.)  Sumner introduced Johnson and others at the Mondragon residence to the Cutbank family – her boyfriend Montana and Alexia Cutbank.  For several weeks in the late summer of 2019, Sumner, Defendant Alexia Cutbank, Johnson, and others at the Mondragon house associated with each other – using drugs and traveling to various locations in northern Minnesota.

Things turned sour in the group sometime in the last days of July when the group, including Johnson, Defendant Alexia Cutbank, Sumner, and others, were at the casino in Cass Lake, Minnesota.  After a night of drinking and doing drugs, Johnson boldly stole Cutbank's Cadillac, which she had just purchased after turning 18, money, and drugs. (PSR ¶ 9.)  As Johnson traveled back to Red Lake with Cutbank's possessions, he bragged to his friends via FaceBook about his misdeeds.

When Cutbank discovered the betrayal, she was enraged.  Defendant Cutbank enlisted the help of her brother Montana, her boyfriend, and her best friend Mia Sumner to seek out Johnson.  The group traveled to the Mondragon residence on the Red Lake Indian Reservation in the hours after the theft to find Johnson.  The group did not find Johnson, but found Johnson's roommate Jordan Drouillard.  (PSR ¶ 9.)  Cutbank and the group

threatened Drouillard and demanded to know the location of Johnson. Ultimately, Defendant Cutbank struck Drouillard with a pair of bolt cutters and threatened with a gun.

The threats to Johnson did not stop. Cutbank sought retribution for the theft. In the late evening hours of August 4, 2019, Johnson was driving Cutbank's Cadillac through Red Lake when he came under fire from another vehicle. (PSR ¶ 10.) Multiple rounds were fired into the Cadillac. Johnson escaped and called police. However, Johnson did not tell police that he was embroiled in a battle with Cutbank and her associates. Approximately two hours after the shooting, Defendant Cutbank, Sumner, Montana Cutbank, Cutbank's boyfriend, and another male were located at the casino in Cass Lake, which is approximately 45 minutes away from Red Lake. During a search of the hotel room rented by Sumner, law enforcement located drugs and multiple rounds of ammunition.

## II.    Defendant Cutbank's Prior Criminal History and Post-Arrest Conduct

Defendant Sumner was barely 18 years old when she callously gunned down Daniel Johnson and injured Tyra Schoenborn. Prior to the murder, Defendant Cutbank had a lengthy series of juvenile adjudications related to theft, false information to law enforcement, fleeing police, and assaults on law enforcement and other individuals. (PSR ¶¶ 57-73.) From 11 years of age, Defendant Cutbank was either on probation or in juvenile placements due to continued criminal activity. After many attempts in the juvenile justice system, Defendant Cutbank received an extended jurisdiction juvenile sentence in 2018,

which was ultimately converted to an adult sentence due to her continued violations of probation and commission of new offenses.  (PSR ¶ 76.)

Prior to Defendant Cutbank's arrest for the murder of Daniel Johnson in December 2021, Defendant Cutbank was charged with a series of violent and dangerous offenses including carrying a firearm without a permit (PSR ¶ 79), fleeing police (PSR ¶ 82), attempted first degree murder (PSR ¶ 89), and felon in possession of ammunition (PSR ¶ 90).  Despite her youth, Defendant Cutbank was uncontrollable.

Once arrested for the murder of Daniel Johnson in December 2021, Defendant Cutbank was jailed pending trial.  Despite being in a controlled setting, Defendant Cutbank has failed to follow the rules and has incurred numerous incidents of institutional misconduct including assault, possession of "hooch," and attempting prohibited conduct with other inmates.  (PSR ¶ 92.)

## SENTENCING GUIDELINES CALCULTION

Although no longer mandatory, the United States Sentencing Guidelines should be the starting point and the initial benchmark in determining an appropriate sentence.  *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Booker*, 543 U.S. 200, 245-58 (2005).   In *Gall*, the Supreme Court set forth the appropriate sentencing methodology:  the district court determines the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence.  *Id.* at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate

Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors").

On September 20, 2022, Defendant Cutbank pled guilty to Murder in the Second Degree in violation of 18 U.S.C. §§ 2, 1111, 1151, and 1153(a), and Assault Resulting in Serious Bodily Injury in violation of 18 U.S.C. §§ 2, 113(a)(6), 1151, and 1153(a). (PSR ¶ 3.) Based on the offense of conviction, a mandatory minimum sentence is not applicable. Nonetheless, the United States Sentencing Guidelines are applicable. As outlined in the Presentence Investigation Report, the United States Probation Office ("USPO") has determined that the Total Offense Level is 37. (PSR ¶ 52.) Further, the USPO has determined that Defendant Sumner's criminal history category is VI. (PSR ¶ 85.) This calculation results in a Sentencing Guidelines Range of 360 months of imprisonment to life. (PSR ¶ 136.)

As is outlined in the plea agreement, the United States believed that Defendant Cutbank qualified for an aggravating role pursuant to U.S.S.G. § 3B1.1(c) because Defendant Cutbank organized and led the criminal conduct. The USPO found that Defendant Cutbank was eligible for a 2-level enhancement based on her aggravating role in the offense. Thus, the United States expects that Defendant Cutbank will object to the enhancement.

In making a determination about an offender's role in an offense, U.S.S.G. § 3B1.1 requires the court to examine the totality of the circumstances, including the degree to

8

which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; the nature and extent of the defendant's participation in the commission of the criminal activity; the recruitment of accomplices; the claimed right to a larger share of the fruits of the crime; the degree of participation in planning or organizing the offense; the nature and scope of the illegal activity; and the degree of control and authority exercised over others.  U.S.S.G. § 3B1.1, Appl. Nt. 4.  Here, Defendant Cutbank is clearly more culpable than the co-defendants she recruited.  Thus, even though such an increased sentence could be considered under 18 U.S.C. § 3553(a) factors, the United States submits that a two-level reduction in determining the Guidelines range is appropriate.

Defendant Cutbank recruited her friend Mia Sumner, her stepmother Rose Siewert, and a relative stranger Daniel Barrett to assist her in seeking revenge for Johnson's theft of her vehicle, drugs, and money.  Defendant Cutbank organized the plan and told an inmate at the Minnesota Department of Corrections what her plan would be after learning that Johnson would not easily return her possessions and suffer the consequences of her actions. Defendant Cutbank solely exercised the decision-making authority over the crime.  Based on the nature and circumstances of Defendant Cutbank's actions in the offense, the government respectfully requests that the Court apply a two-level enhancement for Defendant Cutbank's aggravating role in the offense.

The United States respectfully requests the Court adopt the Guidelines calculations as determined by the United States Probation Office.   And, for the reasons set forth in the

next section, the United States requests that the Court impose a sentence of 276 months of imprisonment followed by 5 years of supervised release. Such a sentence would be sufficient, but not greater than necessary, to accomplish the goals of sentences as outlined in 18 U.S.C. § 3553(a).

## SECTION 3553(a) SENTENCING FACTORS

In determining Defendant Cutbank's sentence, the Court must assess the applicable sentencing factors outlined in 18 U.S.C. § 3553(a). Those factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the public from further crimes of the defendant, and (d) to provide the defendant with needed education and vocational training, medical care or other correctional treatment in the most effective manner; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

Here, analysis of the applicable Section 3553(a) factors establishes that a sentence of 276 months of imprisonment followed by 5 years of supervised release is sufficient, but not greater than necessary, to account for Defendant Cutbank's actions on August 12, 2019.

## I.   Nature and Circumstances of the Offense

Defendant Cutbank organized a brazen ambush of Daniel Johnson in retribution for stealing her car, drugs, and money. Defendant Cutbank pulled the trigger and killed

10

Johnson and injured Schoenborn.  The crime was bold, but the actions before and after makes the crime more heinous.  Defendant Cutbank did not try to recover her possessions kindly – attributing Johnson's actions to drugs and youthful nonsense.  Rather, from the moment her possessions were stolen, Cutbank used violence to accomplish what she wanted – retribution.

Defendant Cutbank has failed to show remorse for her actions and only continued to exhibit her propensity towards violence and living a life filled with drugs, violence, and retaliation.  Defendant Cutbank has been charged twice with possessing a firearm or ammunition since August 2019.  Defendant Cutbank has been charged with violently shooting an individual that wronged her brother multiple times.  Defendant Cutbank has assaulted individuals inside and outside of the jail.    Defendant Cutbank's actions on August 12, 2019, must be punished and society must be protected from Ms. Cutbank.

The Government submits that a sentence of 276 months of imprisonment followed by 5 years of supervised release appropriately accounts for Defendant Cutbank's actions in the offense.

## II.    Offender Characteristics

Defendant Cutbank has led an undeniably difficult life.  Defendant Cutbank was left to fend for herself and modeled her behavior after her older brothers – be tough, don't be beaten by the streets or others.  Defendant Cutbank has no support system and despite her youth was required to be an adult and carry out adult activities.

The government did not anticipate the criminal history category outlined in the Presentence Report.  The government believes that the Court may vary slightly from the Guidelines range based on an over-represented criminal history.  However, any variance must be weighed against the nature and circumstances of the case and Defendant Cutbank's actions post-arrest.  After balancing these factors, the United States recommends a sentence of 276 months of imprisonment followed by 5 years of supervised release.

## III.    Fair and Just Sentence

In evaluating what is a sufficient, but not greater than necessary, sentence, the Court must examine several societal factors in addition to the specific factors surrounding the offense and the defendant.  Namely, the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, and offers deterrence – both specific and general.  Here, a significant sentence of imprisonment followed by five years of supervised release balances all these societal and personal factors.

Defendant Cutbank is a violent offender that has shown no remorse or ability or desire to change.  Defendant Cutbank lives her life by her rules and anyone that crosses her is in danger.  Defendant Cutbank committed a horrific act – she brazenly ambushed and murdered Daniel Johnson because he stole her car.  She injured someone else in the process.  Had her gun not jammed, Defendant Cutbank may have caused more carnage on August 12, 2019.  Her role in this offense requires a significant sentence – people cannot go around murdering because they did something wrong.

12

**IV.     Restitution**

As outlined in the PSR, the Minnesota Crime Victims Reparations Board compensated Daniel Johnson's family and the funeral home for funeral expenses.  The United States respectfully request that the Court impose a restitution obligation of $5,468.84.

<u>**CONCLUSION**</u>

The United States respectfully requests that the Court impose a sentence of 276 months' imprisonment followed by 5 years of supervised release.   This sentence is reasonable as guided by the factors outlined in 18 U.S.C. § 3553(a).

Dated:  April 11, 2023                              Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*s/Deidre Y. Aanstad*

BY:  DEIDRE Y. AANSTAD
Assistant U.S. Attorney
Attorney ID No. 0331788

13